# STATE OF MICHIGAN

# COURT OF APPEALS

In re SNOW/WILLIAMS/ROBINSON, Minors.

UNPUBLISHED
July 25, 2017

No. 335536
Wayne Circuit Court
Family Division
LC No. 10-496549-NA

Before: MURPHY, P.J., TALBOT, C.J., and O'CONNELL, J.

PER CURIAM.

Respondent appeals as of right the trial court's order terminating her parental rights to her six minor children under MCL 712A.19b(3)(c)(*i*) (conditions leading to adjudication continue to exist), (g) (failure to provide proper care or custody), and (j) (reasonable likelihood of harm if child returned home). We affirm.

On appeal, respondent argues that the trial court clearly erred in finding clear and convincing evidence in support of the statutory grounds for termination and in finding, by a preponderance of the evidence, that termination of her parental rights was in the best interests of the children. If a trial court finds that a single statutory ground for termination has been established by clear and convincing evidence and that it has been proved by a preponderance of the evidence that termination of parental rights is in the best interests of a child, the court is mandated to terminate a respondent's parental rights to that child. MCL 712A.19b(3) and (5); *In re Beck*, 488 Mich 6, 10-11; 793 NW2d 562 (2010); *In re Moss,* 301 Mich App 76, 90; 836 NW2d 182 (2013); *In re Ellis*, 294 Mich App 30, 32; 817 NW2d 111 (2011). "This Court reviews for clear error the trial court's ruling that a statutory ground for termination has been established and its ruling that termination is in the children's best interests." *In re Hudson*, 294 Mich App 261, 264; 817 NW2d 115 (2011); see also MCR 3.977(K). "A finding is clearly erroneous if, although there is evidence to support it, we are left with a definite and firm conviction that a mistake has been made." *In re HRC*, 286 Mich App 444, 459; 781 NW2d 105 (2009). In applying the clear error standard in parental termination cases, "regard is to be given to the special opportunity of the trial court to judge the credibility of the witnesses who appeared before it." *In re Miller*, 433 Mich 331, 337; 445 NW2d 161 (1989).

MCL 712A.19b(3)(c)(*i*) provides that a court may terminate parental rights under the following circumstances:

-1-

(c) The parent was a respondent in a proceeding brought under this chapter, 182 or more days have elapsed since the issuance of an initial dispositional order, and the court, by clear and convincing evidence, finds . . .

(*i*) The conditions that led to the adjudication continue to exist and there is no reasonable likelihood that the conditions will be rectified within a reasonable time considering the child's age.

MCL 712A.19b(3)(g) provides that a court may terminate parental rights when the court finds, by clear and convincing evidence, that "[t]he parent, without regard to intent, fails to provide proper care or custody for the child and there is no reasonable expectation that the parent will be able to provide proper care and custody within a reasonable time considering the child's age." Finally, MCL 712A.19b(3)(j) provides that a court may terminate parental rights when the court finds, by clear and convincing evidence, that "[t]here is a reasonable likelihood, based on the conduct or capacity of the child's parent, that the child will be harmed if he or she is returned to the home of the parent."

Here, the evidence, spanning several years and two protective proceedings, showed that respondent: (1) chronically neglected the children's medical needs and conditions, which included failure to thrive, seizures, lead poisoning, and cognitive impairments, regularly missing doctor's appointments; (2) did not properly attend to behavioral problems of the children, regularly missing therapy sessions; (3) at times kept and housed the children in unsanitary, unhealthy, and deplorable living conditions; (4) constantly relocated, moving to new homes and school districts numerous times, which caused substantial enrollment problems and attendance failures at the children's schools, along with disruptions in reunification services; (5) engaged in evasive conduct with the Department of Health and Human Services (DHHS) and Child Protective Services (CPS) regarding the children's whereabouts and care; (6) did not fully comply with her treatment plans, and to the extent that she was in compliance, did not benefit from the services; (7) had intermittent lapses where she failed to provide proper care and custody for her children; and (8) repeatedly involved herself in relationships with men who were violent and physically abusive, including one individual, the father of her two youngest children, whom she secretly continued to see despite the violence, personal protection orders, and the danger posed to her children.[1]   In light of this evidence, we cannot conclude that the trial court

---

[1] Especially disturbing was evidence pertaining to the shooting death of one of respondent's boyfriends by the father of the two youngest children; the shooting occurred two blocks from respondent's home and in the presence of one of the children. Testimony at the termination hearing revealed that respondent had met with the father/shooter a couple of times a few weeks before the murder, during her relationship with the boyfriend, that she brought some of the children to the visits, that respondent had consensual sexual intercourse with the father on one of the occasions, and that the father told respondent that he planned to kill the boyfriend, although respondent did not believe that he would do so, even though he had an extensive history of violence.

committed clear error in finding, by clear and convincing evidence, that termination of respondent's parental rights was justified under MCL 712A.19b(3)(c)(*i*), (g), and (j).

Respondent argues that her many relocations resulted from an effort to provide the children with safe and suitable housing and to avoid domestic violence, not evasion of DHHS and CPS, that she had completed most of her treatment requirements and was well on her way to completing the remainder of her obligations, that she maintained employment, that she had no addictions to controlled substances, that the violent father referred to in footnote 1 above is no longer an issue in light of his imprisonment, and that the children's three fathers were to blame for the missed medical visits, as they failed to provide promised transportation.

We first note that respondent testified, in August 2016, that she had been employed for about a week and a half at a plastics packaging company and that her last job was in 2014, so we question respondent's claim that she maintained employment. The record does reflect that respondent has no problem with nor uses controlled substances. With respect to respondent's treatment plan and services, the record reveals that she was not in full compliance. And the record supports the trial court's conclusion that respondent had failed to adequately benefit from services that were completed. See *In re Frey*, 297 Mich App 242, 248; 824 NW2d 569 (2012) (a respondent must demonstrate that he or she sufficiently benefited from proffered services). In regard to the father/shooter, he is indeed out of the picture, but this is due to his imprisonment for murder, not any voluntary act or decision by respondent to exclude him from her life to protect the children. As to blaming the fathers for the medical neglect, the children were in respondent's care and custody, financial assistance for transportation was available, and the record does not support a conclusion that the neglect resulted from broken transportation promises by the fathers. Finally, with respect to the many relocations, while some of the moves may arguably have been justified for reasons that cannot be blamed on respondent, many were not, resulting from her own mistakes or conduct.

Additionally, respondent devotes much time attacking the testimony and opinions of a foster care worker employed by a private foster care agency that was brought into the case; the worker pushed for termination for the various reasons set forth above. Respondent notes that DHHS, at one time, did not believe that termination of respondent's parental rights should be sought. Respondent complains that the foster care worker's testimony and views constituted speculative and unsubstantiated hearsay, absent any citation or discussion of legal authorities by respondent pertaining to hearsay. Assuming that there was hearsay testimony by the worker, MRE 801, as identified by respondent, it was either on irrelevant matters that played no role in the court's ultimate ruling or touched on relevant matters for which there already existed plenty of untainted evidentiary support. On this unpreserved issue, any presumed plain error was not prejudicial. See *In re HRC*, 286 Mich App at 450.

With respect to the children's best interests, respondent raises many of the same points discussed above in connection with the statutory grounds for termination, along with claiming the presence of a strong bond with the children, caring interactions during visitations, and a deep love in general between respondent and her children. In regard to the children's best interests, we place our focus on the child rather than the parent. *Moss*, 301 Mich App at 87. The trial court may consider such factors as "the child's bond to the parent, the parent's parenting ability, the child's need for permanency, stability, and finality, and the advantages of a foster home over

the parent's home." *In re Olive/Metts Minors*, 297 Mich App 35, 41-42; 823 NW2d 144 (2012) (citations omitted). "The trial court may also consider a parent's history of domestic violence, the parent's compliance with his or her case service plan, the parent's visitation history with the child, the children's well-being while in care, and the possibility of adoption." *In re White*, 303 Mich App 701, 714; 846 NW2d 61 (2014).

All of the reasons alluded to earlier in support of the grounds for termination equally support a determination that the trial court did not clearly err in finding that a preponderance of the evidence established that termination of respondent's parental rights was in the best interests of the children. As observed by the trial court when ruling on the best-interests question, the children's special needs could be better addressed by foster parents, the children only faced chaos and tumult when in respondent's care, and the children needed a more permanent and safe atmosphere for the benefit of their development. We fully agree. Although we have no doubt that respondent loves her children and that a bond exists between them, the surrounding circumstances dictated that the children's best interests would be served by termination. Finally, we have no qualms with the trial court giving little to no weight to the wishes of the eight-year-old child, which were certainly genuine, given the gravity of the situation and the difficulty of a young child to fully grasp the events shaping and impacting her life.

Affirmed.

/s/ William B. Murphy
/s/ Michael J. Talbot
/s/ Peter D. O'Connell